UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**MUSSA ALI**,

    Plaintiff,

 v.

**CARNEGIE INSTITUTION OF
WASHINGTON**, and **UNIVERSITY OF
MASSACHUSETTS**,

    Defendants.

Case No. 3:12-cv-01764-SI

**OPINION AND ORDER**

Joseph W. Berenato III, and Steven B. Kelber, Berenato & White, LLC, 6550 Rock Spring
Drive, Suite 240, Bethesda, MD 20817. Joel P. Leonard, and John D. Ostrander, Elliott,
Ostrander & Preston, P.C., 707 S.W. Washington Street, Suite 1500, Portland, OR 97205.
Attorneys for Plaintiff.

Kurt G. Calia, Covington & Burling LLP, 333 Twin Dolphin Drive, Suite 700, Redwood Shores,
CA 94065. Alexa R. Hansen, and Nathan E. Shafroth, Covington & Burling, LLP, 1 Front Street,
Floor 35, San Francisco, CA 94111. Kelly M. Jaske, Jaske Law LLC, 521 S.W. Clay Street,
Suite 209, Portland, OR 97201. Attorneys for Defendants.

**Michael H. Simon, District Judge**.

   Plaintiff Mussa Ali ("Ali") brings this lawsuit against Defendants Carnegie Institution of

Washington ("Carnegie") and University of Massachusetts ("UMass") (collectively

"Defendants") to correct the inventorship of five issued patents related to gene silencing. In an

earlier Opinion and Order, the Court granted Defendants' motion to dismiss UMass as immune

from suit and deferred ruling on the remainder of Defendants' motion. Dkts. 18, 41. For the

reasons stated below, Ali's Motion for Reconsideration re Waiver of Sovereign Immunity

(Dkt. 45) is **DENIED**; Defendant Carnegie's Motion for Reconsideration of the Court's Order

Granting in Part Plaintiff's Motion for Jurisdictional Discovery is **GRANTED** (Dkt. 46); and

Defendants' Motion to Dismiss or Strike Plaintiff's Amended Complaint (Dkt. 18) is

**GRANTED IN PART** and **DENIED AS MOOT IN PART**. Pursuant to 18 U.S.C. § 1406(a),

the Court **TRANSFERS** this case to the United States District Court for the District of

Columbia.

## BACKGROUND

This case arises out of Ali's claim that he was erroneously omitted as a named inventor

on five patents: U.S. Patent Nos. 6,506,559; 7,538,095; 7,560,438; 7,622,633 and 8,283,329.

Dkt. 4 at ¶¶ 3, 25-26. Defendants are owners, by assignment, of the patents at issue. *Id.* at ¶¶ 3-4.

Defendants move to dismiss or strike Ali's First Amended Complaint. Dkt. 18. On May

28, 2013, the Court issued an Opinion and Order resolving some of the issues in this case and

setting a procedure for resolving the remaining issues. Dkt. 41. In that Opinion and Order, the

Court dismissed UMass because it was entitled to sovereign immunity, and the Court granted in

part jurisdictional discovery, which the Court temporarily stayed. Subsequently, and in

accordance with the Court's request, the parties briefed whether UMass is a "required party." In

addition to briefing whether UMass is a "required party," Carnegie argued that Ali lacks standing

to bring this lawsuit. Carnegie also submitted a motion asking the Court to reconsider its grant of

jurisdictional discovery. Ali submitted a motion requesting that the Court reconsider its finding

that UMass is entitled to sovereign immunity.

Remaining to be decided by the Court are the following issues: (1) whether Ali has

standing to bring suit pursuant to 35 U.S.C. § 256; (2) the motion to reconsider UMass's

sovereign immunity; (3) the motion to reconsider jurisdictional discovery; (4) the motion to

dismiss the suit because the Court lacks personal jurisdiction over the Defendants; and (5) the

motion to dismiss the suit because UMass is a necessary party that cannot be joined.

## DISCUSSION

Carnegie asserts three independent grounds for complete dismissal of this case. First,

Carnegie argues that Ali's arguments regarding whether UMass is a necessary party demonstrate

that Ali lacks standing to bring this lawsuit. Second, Carnegie argues that because the Court

lacks personal jurisdiction over it, this case must be dismissed under Federal Rule of Civil

Procedure 12(b)(2). Third, Carnegie argues that UMass, which the Court previously dismissed, is

a required party that cannot be joined; thus, the case must be dismissed pursuant to Federal Rule

of Civil Procedure 12(b)(7). In the alternative to these three arguments for complete dismissal,

Carnegie contends that Ali's second count and alternative second count must be dismissed for

failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In response to

Defendants' motion to dismiss, Ali sought discovery related to Carnegie's motion, which the

Court previously granted in part.

## A.  Article III Standing

In Carnegie's Reply Brief, Carnegie argues for that first time that Ali lacks Article III

standing to bring suit under 35 U.S.C. § 256. *See* Dkt. 56 at 3-5. Because Carnegie first raised

this issue in a reply brief and Ali did not seek leave to file a sur-reply, Ali has not responded to

this argument. Generally, any argument first raised in a reply brief is waived. *See Graves v.

Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) (citing *U.S. ex rel. Meyer v. Horizon Health Corp.*,

565 F.3d 1195, 1199 n.1 (9th Cir. 2009)). A challenge to a plaintiff's standing, however, cannot

be so easily swept aside. Because "standing is an essential and unchanging part of the case-or-

controversy requirement of Article III," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

(1992), courts "are required sua sponte to examine jurisdictional issues such as standing"

regardless of whether the parties raise the issue. *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2001). Moreover, defects in a plaintiff's standing cannot be waived by a defendant. *See D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008) (quoting *United States v. Hays*, 515 U.S. 737, 742 (1995)). Accordingly, in assuring itself of proper jurisdiction, the Court will address Carnegie's challenge to Ali's standing.

### 1.  Legal Standards

It is axiomatic that "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Article III standing "is [a] threshold [requirement] in every federal case," determinative of "the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The essential question is whether a plaintiff can satisfy the "case or controversy" requirement of Article III of the Constitution. U.S. Const. art. III, § 2, cl. 1; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). To satisfy the requirements of Article III, a plaintiff must demonstrate: (1) injury in fact, (2) that is causally connected to the conduct complained of, and (3) may be redressed by a favorable court decision. *Chou v. Univ. of Chicago*, 254 F.3d 1347, 1357 (Fed. Cir. 2001) (citing *Lujan*, 504 U.S. at 560-61).

To have Article III standing to bring a claim seeking to correct the named inventors on an issued patent, a plaintiff must have at least a non-contingent ownership interest in the patent or be able to identify some concrete financial or personal reward that would spring from the plaintiff's listing as a named inventor. *See Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1327 (Fed. Cir. 2009); *Chou*, 254 F.3d at 1358-59. [1] Without such an interest, a plaintiff cannot establish that he suffered an injury in fact and lacks standing. *See Chou*, 254 F.3d at 1359.

---

[1] In *Chou*, the Federal Circuit discussed, without deciding, whether a reputational interest alone could provide sufficient standing to a plaintiff who could not allege an ownership or

2. **Analysis**

In addition to Ali's claim for correction of inventorship, Ali asserts two additional claims in the alternative, which are both styled, "Legal Damages." *See* Dkt. 4, at ¶¶ 28-36. In his first claim for legal damages, Ali asserts that he is entitled to a certain percentage of the revenues derived from the licensing and monetization of the patents-in-suit pursuant to a UMass policy. *See id.* at ¶¶ 28-32. Ali alleges that his entitlement to this compensation was given in exchange for the assignment of his whole interest in the patents-in-suit to UMass. *Id.* at ¶ 30. In his second, alternative claim for legal damages, Ali asserts that he did not assign any of his interest in the patents-in-suit to UMass, retaining it for himself; thus, Ali is entitled to a portion of the royalties and fees that Defendants' derived from exploiting the patents-in-suit. *Id.* at ¶¶ 33-36. Although it is not clear how Ali intends to pursue these claims for legal damages, the Court construes Ali's claims as arising under contract law.

Relying on *Larson*, Carnegie argues that Ali does not concretely allege an interest sufficient to confer Article III standing. Carnegie argues that Ali's Opposition to Defendant's Motion to Dismiss (Dkt. 43) concedes the issue by stating that his entitlement to financial compensation "is not an issue presented to the court." Dkt. 43, 13-14; Dkt. 56, at 4. In *Larson*, the plaintiff did not have the necessary ownership or financial interests because it was undisputed that he assigned those interests to the defendants. *See Larson*, 569 F.3d at 1322, 1326-27. The plaintiff's ownership interest in the patents-in-suit—necessary for standing—was predicated upon his success on state law contract claims, which would nullify the assignments. *See id.* at 1326-27 ("Without first voiding his patent assignments, Larson has no ownership interest in

---

financial interest. *See Chou*, 254 F.3d at 1359. Because Ali does not assert a reputational interest in the patents-in-suit, the Court need not decide whether such an interest satisfies the requirements of Article III standing. *See Larson*, 569 F.3d at 1327-28 (declining to address reputational interests when the plaintiff had claimed no reputational injury).

the [patents-in-suit.]"). Unlike *Larson*, Ali's success on his state law contract claims, which he

styles as claims for "Legal Damages," will not cause any interests in the patents-in-suit to vest.

Ali asserts that he has not assigned his interest in the patents-in-suit to Defendants. In the event

that Ali is found to be an omitted co-inventor of one or more of the patents-in-suit, Ali alleges

that his interests in those patents will vest in accordance with UMass's policies and that he will

be entitled to financial remuneration. Specifically, Ali contends that the UMass agreement will

pay Ali a percentage of all revenues realized in consideration for his assignment to UMass. *See*

*Larson*, 569 F.3d. at 1326-27. Based on this allegation, Ali suffers an injury due to a financial

loss that is traceable to UMass's alleged conduct in omitting Ali as a co-inventor. *See Chou*, 254

F.3d at 1359.

    Ali alleges that he has an agreement with UMass, but does not allege any separate

agreement that would entitle him to a financial benefit from Carnegie. Therefore, if Ali is named

a co-inventor of some or all of the patents-in-suit and he is entitled to compensation from

UMass, Ali cannot receive that compensation in this suit unless UMass is a party-defendant. This

does not defeat Ali's standing to bring suit under § 256 because Ali's success on that claim will

entitle him to an "order from the [Court] to the Director of the PTO to issue a certificate naming

[him] as an inventor." *Chou*, 254 F.3d at 1359. Although resolution of the § 256 claim alone will

not give Ali a judgment against any party for the allegedly promised compensation, the

redressability requirement of Article III is satisfied so long as a plaintiff shows "that a favorable

decision will relieve a discrete injury to himself." *Massachusetts v. E.P.A.*, 549 U.S. 497, 525

(2007) (quoting *Larson v. Valente*, 456 U.S. 228, 244, n.15 (1982)). Ali "need not show that a

favorable decision will relieve his *every* injury." *Id.* Accordingly, for standing purposes, the

injury suffered by Ali in his § 256 claim is, at least, partially redressable by the Court without

UMass being party to this lawsuit. *Chou*, 254 F.3d at 1358-59 (explaining that not being named a co-inventor "would be redressable by an order from the district court to the Director of the PTO to issue a certificate naming [the plaintiff] as an inventor, which would entitle her under the University's policy to a share of the licensing proceeds and stock").

Ali's two claims for legal damages appear to be alleged in the alternative: either Ali and UMass have a contract that compels Ali to assign his interests in the patents-in-suit in exchange for a fixed percentage of derived revenues, or there is no contract and Ali retains his ownership interests in the patents-in-suit. *See* Dkt. 4, at ¶¶ 26-36; *see* Fed. R. Civ. P. 8(d)(2), (3). At this preliminary stage, Ali has sufficiently alleged standing to bring suit.

**B.  Reconsideration of UMass's Sovereign Immunity**

Ali filed a motion to reconsider the Court's prior dismissal of UMass from this lawsuit on the basis of sovereign immunity. *See* Dkt. 45. As grounds for the Court's reconsideration of its prior decision, Ali argues that UMass waived its sovereign immunity with respect to the patents-in-suit. Ali contends that because the United States allegedly provided some or all of the funding that supported the research underlying the patents-in-suit, any patents resulting from that funding fall within the purview of the Bayh-Dole University and Small Business Patent Procedures Act, 35 U.S.C. § 200 *et seq.* ("Bayh-Dole Act" or "Act"). With respect to the patents-in-suit, Ali argues that UMass "made a clear declaration" of its submission to the jurisdiction of the federal courts, waiving sovereign immunity. Dkt. 45 at 5.[2]

_____

[2] A state may also waive sovereign immunity when it voluntarily invokes the jurisdiction of the federal courts. *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76 (1999) (citing *Gunter v. Atl. Coast Line R.R. Co.*, 200 U.S. 273, 284 (1906); *see also, e.g.*, *Regents of Univ. Of N.M. v. Knight*, 321 F.3d 1111, 1124 (Fed. Cir. 2003) ("[I]t has long been established that a state waives its Eleventh Amendment immunity when it consents to federal court jurisdiction by voluntarily appearing in federal court."). This means of waiver is not at issue here.

### 1. Legal Standards

"[A]ny waiver of sovereign immunity by a state must be express and voluntary, and cannot be implied or constructive." *State Contracting & Eng'g Corp. v. State of Fla.*, 258 F.3d 1329, 1336 (Fed. Cir. 2001) (citing *Coll. Sav. Bank*, 527 U.S. at 682). The Supreme Court has expressly rejected the argument that a state may impliedly or constructively waive sovereign immunity. *See Coll. Sav. Bank*, 527 U.S. at 680-81 (overruling *Parden v. Terminal Ry. of Ala. Docks Dept.*, 377 U.S. 184 (1964)). A state's use of "arrangements controlled by federal law and reviewable only in federal court," such as the state acting as a market participant, cannot erode sovereign immunity. *See Xechem Int'l, Inc. v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 382 F.3d 1324, 1329-30 (Fed. Cir. 2004). Waiver by statute may be sufficient, but the statute must go beyond "ambiguous and general consent to suit provisions" to include specific consent to suit in federal court. *See Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306-07 (1990) (finding waiver where the state statute's venue provision expressly included suits in courts of the United States).

Congress enacted the Bayh-Dole Act to enable the "use [of] the patent system to promote the utilization of inventions arising from federally supported research or development" and to "ensure that the Government obtain[ed] sufficient rights in federally supported inventions." 35 U.S.C. § 200. To achieve these goals, the Act vests several unique rights to "subject inventions," which are researched and developed by contractors, including universities, through the use of federal funds. *See generally Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 131 S. Ct. 2188, 2193 (2011) (citing 35 U.S.C. § 200, *et seq.*). Included in this bundle of rights, the Federal Government, through a funding agency, obtains: (1) "a nonexclusive, nontransferable, irrevocable, paid-up license," 35 U.S.C. § 202(c)(4), and (2) "march-in rights," which permit the funding agency to license a subject invention to a third-party who will

commercialize the invention, *id.* at §§ 201(f), 203(a). Further, when the contractor declines title to an invention, the agency may vest title in the inventor, subject to provisions of the Act and any funding agreement between the agency and the contractor. *Id.* at § 202(d).

**2.  Discussion**

Ali contends that the Bayh-Dole Act places UMass at the center of a *quid pro quo* arrangement where the funding incentives provided by the Act are conditioned on UMass's selective waiver of sovereign immunity to suits in federal court relating to patents funded by the Act. *See* Dkt. 45 at 5-6. Although this argument is innovative, the Bayh-Dole Act does not "expressly" require UMass to respond to a § 256 action in a United States District Court. The Court rejects Ali's arguments for three reasons.

First, Ali notes that his suit questions whether UMass is in compliance with the requirements under the Act; however, as Ali acknowledges, no court has recognized a private cause of action under the terms of the Act. *See, e.g.*, *Network Signatures, Inc. v. Citibank, N.A.*, No. SACV 08-0718 DOC (RNBx), 2008 WL 5216032, at *3 (C.D. Cal. Dec. 4, 2008) (collecting cases). Indeed, the Act "clarif[ies] the order of priority of rights between the Federal Government and a federal contractor[, such as UMass,] in a federally funded invention that already belongs to the contractor. Nothing more." *Stanford*, 131 S. Ct. at 2197; *see also Therien v. Trustees of Univ. of Pa.*, No. Civ.A. 04-4786, 2006 WL 83448, at *3 (E.D. Pa. Jan. 10, 2006) ("[T]he Act does not determine the relationship between universities and their faculty members. Rather, the Bayh-Dole Act regulates the relationship between government agencies and institutions that receive federal funding.") (citation omitted). Although the Act does make limited reference to the inventor, the Federal agency is solely tasked with determining whether or not the inventor may retain rights to the invention under specified conditions. *See* 35 U.S.C. § 202(d) ("the Federal agency *may consider* . . . requests for retention of rights by the inventor") (emphasis added). If

Page 9 – OPINION AND ORDER

the inventor disagrees with the agency's determination, the inventor may appeal the agency's decision in a petition to the United States Court of Federal Claims. *See id.* at § 203(b). Thus, no court has recognized a private right of action because it is not granted by the text of the statute.

Second, Ali argues that the funding agreements, which provided for the research leading to the patents-in-suit, "includ[e] the agreement to regulation . . . by federal authority." Dkt. 58 at 6. Although this is true, there is nothing in the text of the statute requiring a funding recipient to consent to suit in federal court, which is unsurprising because enforcement of the Act's provisions by the United States would not require a state's waiver of sovereign immunity. *See, e.g.*, *West Virginia v. United States*, 479 U.S. 305, 311 (1987) ("States have no sovereign immunity as against the Federal Government.") (citation omitted). Submitting to "some" regulation by a funding agency is not equivalent to an express waiver of sovereign immunity from suit in a federal court. *See Coll. Sav. Bank*, 527 U.S. at 676-77. Ali's second argument falls short of the requirements mandated by the Supreme Court's strong presumption against waiver of sovereign immunity. *See id.* at 682.

Third, the Court notes that Ali's argument that UMass's receipt of federal funding for the patents-in-suit came with a number of strings attached, including compliance review in the federal courts, also fails to establish a waiver of sovereign immunity. Pursuant to *South Dakota v. Dole*, 483 U.S. 203 (1987), the Spending Clause permits "Congress to further its policy objectives by conditioning the receipt of federal funds on compliance with federal mandates." *Mayweathers v. Newland*, 314 F.3d 1062, 1066 (9th Cir. 2002) (citing *Dole*, 483 U.S. at 206). There is nothing in the Bayh-Dole Act that suggests waiver of sovereign immunity in federal court is a prerequisite to accepting funding under the Act, thereby permitting suit against a state in a § 256 action. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 243 (1985) (requiring

courts "to be certain of Congress' intent before finding that federal law overrides the guarantees of the Eleventh Amendment."). Even assuming there was some intent in the Bayh-Dole Act to condition a state's receipt of funds on a waiver sovereign immunity, the expression of such intent was insufficiently clear to abrogate UMass's sovereign immunity. *Cf. id.* (requiring Congress to "unequivocally express" its intention to abrogate state sovereign immunity).

In sum, UMass's receipt of funds from the United States to perform the research underlying the patents-in-suit did not deprive it—through waiver, abrogation, or any other means—of its sovereign immunity from suit in federal court.

## C. Reconsideration of Jurisdictional Discovery

Carnegie also filed a motion asking the Court to reconsider granting Ali limited jurisdictional discovery. For the reasons stated below, Carnegie's motion is granted.

### 1. Legal Standards

In patent cases, Federal Circuit law governs the relevance of a request for jurisdictional discovery. *See Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994). Whether jurisdictional discovery is warranted, however, is a question answered by the law of the regional circuit. *See Chi Mei*, 395 F.3d at 1323 (relying on regional circuit law to determine whether the party seeking discovery "made a sufficient threshold showing"); *see also Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1021 (Fed. Cir. 2009) ("We review the district court's denial of discovery, an issue not unique to patent law, for abuse of discretion, applying the law of the regional circuit.").

Because there is no statutorily mandated method for resolving jurisdictional disputes before trial, the mode of resolution is left in the discretion of the trial court. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (citing *Gibbs v. Buck*, 307

U.S. 66, 71-72 (1939)). Generally, discovery is appropriate "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* at 1285 n.1 (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). A court may deny jurisdictional discovery unless the denial "will result in 'actual and substantial prejudice to the complaining litigant' (e.g., 'a reasonable probability that the outcome would have been different had discovery been allowed')." *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1370 (Fed. Cir. 2007) (quoting *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)).

    **2.  Discussion**

    In the Court's prior Opinion and Order, the Court granted Ali limited discovery into the relationship between Carnegie and its licensees of the patents-in-suit in Oregon, if any existed. Underlying the Court's reasoning was the expectation that limited, non-burdensome jurisdictional discovery should generally be given when the discovery sought is "relevant." *See Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378, 383 (9th Cir. 1993) (affirming a district court's stay of discovery when there was no indication "the discovery sought was relevant to whether or not the court has subject matter jurisdiction"); *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987) (affirming a district court's stay of discovery when the complaint "did not raise factual issues that required discovery for their resolution"). In light of the parties' arguments and as will be discussed more thoroughly below, the Court finds that jurisdictional discovery is not warranted because even if Ali obtains the discovery sought, it will be insufficient for the Court to exercise personal jurisdiction over Carnegie. Carnegie's Motion for Reconsideration (Dkt. 46) is, therefore, granted.

## D. Personal Jurisdiction

Carnegie argues that Ali cannot demonstrate that this Court has either general or specific personal jurisdiction over Carnegie. The Court previously deferred ruling on the issue of personal jurisdiction. It has become apparent, however, in the parties' subsequent briefing that even with the requested discovery, Ali will not be able to establish the Court's personal jurisdiction over Carnegie. Based on the analysis that follows, the Court finds that it lacks personal jurisdiction over Defendant Carnegie, the only remaining defendant.

### 1. Legal Standards

"Federal Circuit law governs the issue of personal jurisdiction in . . . patent-related cases." *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1348 (Fed. Cir. 2002). To assert personal jurisdiction over an out-of-state defendant in a patent-related dispute, a court must resolve two inquiries: "whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997). Oregon's long-arm statute extends jurisdiction to the outer limits of due process. *Freeman v. Duffy*, 983 P.2d 533, 534 (Or. 1999). Therefore, the Court considers only whether the exercise of personal jurisdiction over a defendant would satisfy federal due process. *Accord Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (collapsing the two part inquiry where a state's long-arm statute is coextensive with the limits of due process).

The Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." [3] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (citation and internal

---

[3] The Federal Circuit has noted that because a federal court's subject matter jurisdiction to hear patent disputes is based on federal question jurisdiction, 28 U.S.C. § 1331, rather than

quotation marks and citation omitted). To satisfy due process, the plaintiff must show that the

defendant has "certain minimum contacts with [the forum state] such that the maintenance of the

suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945). Under the "minimum contacts" test, "a defendant may be

subject to either specific jurisdiction or general jurisdiction." *LSI Indus. Inc. v. Hubbell Lighting,*

*Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). A court has general personal jurisdiction over an out-

of-state defendant when that defendant has "continuous and systematic general business

contacts" with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,

416 (1984). A court has specific personal jurisdiction where "the defendant has purposefully

directed his activities at residents of the forum, and the litigation results from alleged injuries that

arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. at 472 (citation and

internal quotation marks omitted). Thus, in "contrast to general, all-purpose jurisdiction, specific

jurisdiction is confined to adjudication of issues deriving from, or connected with, the very

controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*,

131 S. Ct. 2846, 2851 (2011) (citation and internal quotation marks omitted).

---

diversity jurisdiction, 28 U.S.C. § 1332, the Due Process Clause of the Fifth Amendment, rather
than the Due Process Clause of the Fourteenth Amendment, governs the court's assertion of
personal jurisdiction. *Deprenyl Animal Health*, 297 F.3d at 1350; *see generally Honeywell, Inc.
v. Metz Apparatewerke*, 509 F.2d 1137, 1143 (7th Cir. 1975). *Int'l Shoe Co. v. Washington*, 326
U.S. 310 (1945), and its progeny were decided under the Due Process Clause of the Fourteenth
Amendment. *See id.* at 311 (the question "for decision [is] whether, within the limitations of the
due process clause of the Fourteenth Amendment, appellant, a Delaware corporation, has by its
activities in the State of Washington rendered itself amenable to proceedings in the courts of that
state"). Nonetheless, the Federal Circuit applies the standards developed in *Int'l Shoe* and its
progeny "to Fifth Amendment due process cases arising under the federal patent laws." *Deprenyl
Animal Health*, 297 F.3d at 1350.

### 2.  Discussion

In this case, Ali argues that the Court may assert both general and specific jurisdiction over Carnegie.[4] In in support of general jurisdiction, Ali asserts that Carnegie's substantial support of research activities in the forum provide sufficient contacts. In support of specific jurisdiction, Ali argues that Carnegie's use of the patents through licensing in the forum and the actions of the patents' listed inventors in the forum are sufficient to establish jurisdiction. The Court addresses each jurisdictional argument in turn.

### a.  General Jurisdiction

A court may not assert general personal jurisdiction over an out-of-state defendant unless the defendant's contacts with the forum state "are so 'continuous and systematic' as to render [it] essentially at home in the forum [s]tate." *Goodyear,* 131 S. Ct. at 2851 (quoting *Int'l Shoe*, 326 U.S. at 317). Neither the United States Supreme Court nor the Federal Circuit "has outlined a specific test to follow when analyzing whether a defendant's activities within a forum are continuous and systematic." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009) (alteration, citation, and internal quotation marks omitted). Instead, the "court must look at the facts of each case to make such a determination." *LSI Indus.*, 232 F.3d at 1375.

In a letter to the Court, Ali offered a comprehensive picture of the specific actions of Carnegie that Ali argues warrant further discovery. *See* Dkt. 52. Even accepting the existence of the activities described by Ali and making all reasonable inferences in his favor, these activities do not demonstrate Carnegie's "continuous and systematic contacts" with the forum state.

---

[4] The actual jurisdictional allegations in Ali's Amended Complaint are quite bare. *See* Dkt. 4 at ¶¶ 2-7. Ali merely alleges that the Court has personal jurisdiction over Carnegie because it does business in this district, generally or related to the patents-in-suit. *See id.* at ¶ 6.

In large part, the activities cited by Ali concern Carnegie's collaborative research efforts with the forum state, primarily through Oregon State University ("OSU") or Oregon Health Sciences University ("OHSU"). *See generally* Dkt. 52. Ali alleges that over the last several years, Carnegie has given almost $300,000 per year in funding to the state. *See id.* at 1. This funding has supported research by OSU, and other participating out-of-state universities, into magma flows under the tectonic plate beneath Oregon, carbon-isotope sample collection in the Metolius region of Oregon, and biological research into the methylation patterns of plants and animals, among other projects. *See id.* at 1-3. In addition to collaborative research, Ali alleges that Carnegie organized and held several banquets honoring research efforts by scientists and held a symposium and screening of a film about the Willamette River. *See id.* at 3.

The standard for general jurisdiction is "fairly high." *See Autogenomics*, 566 F.3d at 1018; *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (describing it as an "exacting standard" because "general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world"). Carnegie's status as a not-for-profit institution complicates the jurisdictional analysis because the activities Ali cites as evidence of Carnegie's sufficient contacts are unlike those activities typically cited by a court asserting, or considering, general jurisdiction. *See, e.g.*, *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 447 (1952) (finding "continuous and systematic" contacts from a corporation that temporarily relocated its business operations to the forum state while its primary revenue generating activity, mining, was suspended in a distant forum). In various Federal Circuit cases, that court has considered, *inter alia*, the following activities in the forum state: attending and meeting potential customers at conferences and trade shows, *Autogenomics*, 566 F.3d at 1018; "purchases of parts and machinery" and the sale of products,

*Synthes*, 563 F.3d at 1297; and, exhibiting products, shipping products, and advertising, *Grober v. Mako Products, Inc.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012). These contacts are unlike those that Carnegie carries on in Oregon.

Perhaps most significantly, all of the activities cited by Ali are conducted in collaboration with one or more universities. This is significant because it precludes Carnegie from developing the infrastructure or personnel footprint in Oregon that might lead a court to find the approximation of its physical presence. *See Helicopteros*, 466 U.S. at 416 (citing a place of business or a license to do business in the forum state as prototypical examples of physical presence). By way of comparison, Carnegie maintains facilities in several states in addition to its primary operations in the District of Columbia. For example, Carnegie's Department of Plant Biology, which is involved in the methylation patterning experience cited by Ali, is physically located in Stanford, California. *See generally Department of Plant Biology*, available at *https://dpb.carnegiescience.edu/* (last visited Nov. 20, 2013). But Carnegie maintains no facilities in Oregon. Even assuming some of Carnegie's research personnel conduct some of their research in Oregon, their work in the forum state is connected only to discrete projects. This type of work, even if it is ongoing, does not establish the continuous and systematic contacts courts have found to satisfy the requirements of general jurisdiction. Moreover, Carnegie's researchers are more akin to the employees sent by the defendant in *Helicopteros* to receive training in the forum than to employees sent to perform general business functions. *Compare Helicopteros*, 466 U.S. at 416, *with Perkins*, 342 U.S. at 447-48 (listing forum as location of president and general manager, who performed numerous general functions for the defendant). This is not to minimize the importance of the research activity carried on by Carnegie's employees; instead, it highlights

that Carnegie's employees' forays into this forum are for discrete, specialized, and non-commercial purposes and are not continuous and systematic.

Several courts have analyzed activities that fall short of establishing general personal jurisdiction using *Helicopteros* and *Perkins* as guideposts. *See Helicopteros*, 466 U.S. at 416 (finding the defendant sent its employees to negotiate a contract, to receive purchased goods, and to receive training); *Perkins*, 342 U.S. at 447-48 (describing the forum as the location where the defendant's president performed numerous general business functions). The Court in *Autogenomics* rejected a plaintiff's characterization of the defendant's appearance at conferences as using "mobile offices." *See* 566 F.3d at 1018. The court rejected personal jurisdiction because such contacts were only "sporadic and insubstantial." *Id.*

In *Campbell Pet Co. v. Miale*, 542 F.3d 879 (Fed. Cir. 2008), the defendant attended a conference in the forum state where an employee demonstrated products, offered them for sale, took orders, and threatened competitors with infringement. *See id.* at 881-82. The *Campbell* court explained that the limited contacts with the forum reflected "far less than the required 'continuous and systematic' contacts with the state" needed to establish general personal jurisdiction. *Id.* at 883. More limited activities within a forum state may be sufficient to establish specific personal jurisdiction, but not general jurisdiction. *Cf. id.* (reasoning that the activities in *Campbell* were insufficient for general jurisdiction, but were sufficient to establish specific jurisdiction).

Underlying the Supreme Court's line of personal jurisdiction cases is idea that a defendant enjoying "the privilege of conducting activities within a state" and "the benefits and protection of the laws of that state" must respond to suits brought in that state. *Int'l Shoe*, 326 U.S. at 319; *see also Burger King Corp.*, 471 U.S. at 476 ("[B]ecause [a defendant's] activities

are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him [or her] to submit to the burdens of litigation in that forum as well."). This concern is highlighted by courts' frequent references to and reliance on the amount of revenue derived from defendants' contacts with the forum. *See, e.g.*, *Campbell*, 542 F.3d at 884 (noting the defendant's contact with the forum amounted to less than two percent of gross revenue); *see also* Charles W. Rhodes, *Clarifying General Jurisdiction*, 34 Seton Hall L. Rev. 807, 846, 846 n.190 (2004) (collecting cases and describing courts' focus on "forum sales and other revenue-generating activities"). Although derived revenue might be only one proxy for a defendant's use of a forum's benefits and protections, the lack of revenue directly derived from Carnegie's research collaborations is significant. *Cf. LSI Indus.*, 232 F.3d at 1375 (finding general jurisdiction over a defendant with a "broad distributorship network" and "millions of dollars of sales" in the forum). As Ali alleges, Carnegie appears to direct money into the forum, in addition to the intrinsic value of the research Carnegie supports.[5] *See* Dkt. 52 at 1. This type of intermittent activity, based on limited research agreements that do not generate revenue, is not akin to the commercial benefit *quid pro quo* arrangement that justifies general personal jurisdiction.

Ali also argues that Carnegie's enforcement and licensing of the patents-in-suit in Oregon contribute to a finding of general personal jurisdiction. In *Campbell*, however, the Federal Circuit found that the defendant's sending of cease and desist letters, an enforcement activity,

---

[5] Indeed, in cases where research agreements have supported a finding of general jurisdiction, the defendant was also engaged in a substantial amount of commercial activity within the forum state. *See, e.g.*, *Avery Dennison Corp. v. Alien Tech. Corp.*, 632 F. Supp. 2d 700, 710-11 (N.D. Ohio 2008) (noting, in addition to five research agreements in the forum, the sale of "millions of RFID devices"); *Massachusetts Inst. of Tech. v. Micron Tech., Inc.*, 508 F. Supp. 2d 112, 121-23 (D. Mass. 2007) (noting, in addition to a research agreement, approximately $20 million made in sales to the forum).

was more relevant to specific jurisdiction and did not increase the defendant's quantum of relevant commercial activity. 542 F.3d at 883-84. Similarly, in *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356 (Fed. Cir. 2006), the court's discussion of licensing agreements and personal jurisdiction was related to specific personal jurisdiction in the context of a declaratory judgment action. *See id.* at 1359, 1363, 1366. When looking at general jurisdiction, licensing agreements are simply another component of a defendant's contacts with the forum that a court must consider. *Cf. Helicopteros*, 466 U.S. at 416 (describing a defendant's negotiation of a transportation-services contract). The Court is not persuaded, however, that Carnegie's limited licensing in the forum, if such licensing occurs, creates the systematic and continuous contacts necessary for general jurisdiction.

In sum, Ali has not alleged that Carnegie has "the kind of continuous and systematic general business contacts" necessary to permit the Court to exact the severe price of general personal jurisdiction on Carnegie. *See Helicopteros*, 466 U.S. at 416.

### b.  Specific Jurisdiction

Even where a defendant is not subject to general personal jurisdiction, "a district court may nonetheless exercise specific personal jurisdiction over the defendant subject to a three part test." *Autogenomics*, 566 F.3d at 1018. The three factors are: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.' " *Inamed*, 249 F.3d at 1360 (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995)). "The plaintiff has the burden of proving parts one and two of the test, and then the burden shifts to the defendant to prove that personal jurisdiction is unreasonable." *Grober*, 686 F.3d at 1346.

Specific jurisdiction provides a cabined basis for jurisdiction over a defendant who has some dealings in a forum, but not enough to justify general jurisdiction. Critically, however, a court's assertion of specific jurisdiction is limited to occasions when the lawsuit arises out of the defendant's contact with the forum. *See, e.g.*, *Burger King Corp.*, 471 U.S. at 472 ("the litigation results from alleged injuries that arise out of or relate to [forum] activities" (quotation marks omitted)).

Regardless of Carnegie's contacts with Oregon, it is undisputed that those contacts do not relate to Ali's claim that he should be listed as a co-inventor on the patents-in-suit. Thus, the activities that may create jurisdiction are constrained to those activities relating to the *issuance* of the patents-in-suit. Any action by Carnegie in Oregon involving the patents-in-suit axiomatically occurred independently of the issuance of the patents. Ali's allegations demonstrate that his alleged involvement in inventing the patents-in-suit occurred solely at UMass's campus in Massachusetts, *see* Dkt. 4 at ¶ 8. There is simply no connection to Oregon that relates to the subject matter of Ali's § 256 suit.[6]

The cases cited by Ali are inapposite. In cases where courts have evaluated the defendants' enforcement actions with the forum state, the plaintiffs were seeking a declaratory judgment of non-infringement. *See, e.g.*, *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789-90 (Fed. Cir. 2011). In declaratory judgment cases, the Federal Circuit noted that "the relevant activities are those that the defendant 'purposefully directs . . . at the forum which relate in some material way to the enforcement or the defense of the patent.'" *Autogenomics*, 566 F.3d at 1020 (quoting *Avocent*, 552 F.3d at 1336). These types of contacts are irrelevant to an action seeking

_____

[6] Nor do Ali's alternative claims for legal damages support specific personal jurisdiction. Both claims involve the existence or non-existence of a policy promulgated by UMass to govern its relationship with its employees. The locus of the agreement is Massachusetts, and it lacks any connection to the forum beyond Ali's current residence.

Page 21 – OPINION AND ORDER

to correct the inventorship of an issued patent, which implicates a time period before the existence of a patent to enforce. *See Acromed Corp. v. Sofamor Danek Grp., Inc.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001) (requiring, for a § 256 claim, "corroborating evidence of any asserted contributions to the conception" and that the contribution was not "insignificant" as measured against the patent as a whole). Similarly, the activities of Carnegie's forum-licensees of the patents are irrelevant because the licensing activities necessarily occurred after to the operative period for the § 256 action—after the patents issued. Accordingly, regardless of the extent of Carnegie's contacts with the forum, Ali's § 256 claim does not arise out of or relate to those contacts, and the Court cannot assert specific jurisdiction over Carnegie.

## E.  Transfer of Venue

Because the Court finds that it cannot assert personal jurisdiction over Carnegie, the Court must decide whether to dismiss or transfer this case. The parties appear to have acknowledged that other judicial districts are a more appropriate place for this suit. Neither party, however, has formally asked the Court to transfer this suit to a more appropriate district. The Court *sua sponte* exercises its authority to transfer this case for the reasons stated below.

### 1.  Legal Standards

If a district court determines that venue is inappropriate, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Personal jurisdiction over the defendant is not required for a transfer under § 1406(a). 28 U.S.C. § 1631; *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962). A court may raise and decide the issue of venue *sua sponte*. *See Costlow v. Weeks*, 790 F.2d 1486, 1487-88 (9th Cir. 1986). Because a defendant may waive an objection to venue or personal jurisdiction, however, a court must provide notice to the parties. *See id.* at 1488; *see also Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1523 (9th Cir. 1983)

(noting that 28 U.S.C. § 1406(a) may be used to transfer actions "to cure [a] lack of personal

jurisdiction") (citing *Goldlawr v. Heiman*, 369 U.S. 463, 466 (1961)).

      To determine whether transfer is "in the interest of justice," courts will generally consider

judicial economy, the relative injustice imposed on plaintiff and defendant, whether the statute of

limitations has expired, and whether the action would be re-filed if the case were dismissed.

*Grain Millers, Inc. v. Pacific Flexpac, Co.*, No. 07-cv-1065-AS, 2008 WL 550124, at *2 (D. Or.

Feb. 26, 2008); *see also Citizens for a Better Env't—Ca. v. Union Oil Co. of Ca.*, 861 F. Supp.

889, 898 (N.D. Cal. 1994) *aff'd*, 83 F.3d 1111 (9th Cir. 1996); William W. Schwarzer *et al.*,

*Rutter Group Practice Guide: Fed. Civ. Pro. Before Trial* ¶ 4:578 (explaining that under 28

U.S.C. §1406(a) a court "must consider the basic equities of the case").

      A transfer under 28 U.S.C. § 1406(a) must be to a transferee court where the case "could

have been brought." Under the general venue statute,[7] venue may be found in three

circumstances: (1) in a "judicial district in which [the defendant] resides"; (2) in a "judicial

district in which a substantial part of the events or omissions giving rise to the claim occurred, or

a substantial part of property that is the subject of the action is situated"; or (3) otherwise, "any

judicial district in which any defendant is subject to the court's personal jurisdiction with respect

to such action." *See* 28 U.S.C. § 1391(b). A defendant-corporation is "deemed to reside . . . in

any judicial district in which such defendant is subject to the court's personal jurisdiction with

respect to the civil action in question." *See* 28 U.S.C. § 1391(c)(2).

      Transfer is preferred over the harsh remedy and "injustice that results from dismissing an

action because the plaintiff [has] made an honest mistake as to where it could have been

brought." 14D Charles Alan Wright & Arthur R. Miller, *et al.*, *Federal Practice and Procedure*,

---

[7] 28 U.S.C. § 1400, the patent venue statue, does not apply in this action because this is
not a suit for patent infringement.

§ 3827 (3d ed. 2007). Dismissal is appropriate when the case was obviously or deliberately filed in the wrong court. *Wood*, 705 F.2d at 1523.

    **2.  Discussion**

    In this case, venue is proper if the court has personal jurisdiction over Carnegie, a "substantial part of the events . . . giving rise to the claim" occurred in this district, or a substantial part of the subject property is located within this district. As discussed above, the Court does not have personal jurisdiction over Carnegie. Further, to the extent the patents-in-suit qualify as property under § 1391(b)(2), they are presumably not located within this district because their owners are located in Massachusetts and the District of Columbia. Accordingly, venue is only proper if "a substantial part of the events . . . giving rise to the claim" occurred within this district. *See* 28 U.S.C. § 1391(b)(2). It is undisputed that none of the events giving rise to this action occurred within the District of Oregon. Ali's alleged contributions to the patents-in-suit occurred while he was working for the named inventors at UMass's campus in Massachusetts. *See* Dkt. 4 at ¶ 8. Ali's relocation to Oregon occurred at some point after his allegedly material contributions to the patents-in-suit and before his filing of this lawsuit. *See Costlow*, 790 F.2d at 1488 (finding no venue in the district court because "virtually all of the activity providing the basis of the complaint took place in" another district). Because Ali cannot establish that venue is proper within this district, this suit must be dismissed or transferred pursuant to 28 U.S.C. § 1406(a).

    Instead of dismissing a suit brought in an improper venue, a court may, "in the interest of justice," transfer it to a proper district. 28 U.S.C. § 1406(a). Although Ali does not face an explicit statute of limitation problem if this case were dismissed and he were forced to re-file, the Court notes that the patents-in-suit were issued as early as 2003. *See Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424, 430 (1965) (noting that many courts have transferred rather than

Page 24 – OPINION AND ORDER

dismissed cases to preserve a plaintiff's opportunity for a hearing on the merits). It is not clear why Ali brought suit in this district, however, the Court notes that Ali originally filed his complaint *pro se*, which may have contributed to this procedural misstep. Further, there is no evidence that Ali brought suit in this district in bad faith. Ali has explicitly suggested that he would join with Carnegie in seeking to transfer this case to a court of "unquestioned jurisdiction," such as the United States District Court for the District of Columbia. Dkt. 64 at 5. Accordingly, the Court finds that the interests of justice would be served by transferring this action to the United States District Court for the District of Columbia, where the bulk of Carnegie's research departments and its administration are headquartered. *See, e.g.*, *Loreto v. Cushman*, 930 F. Supp. 2d 1, 7 (D.D.C. 2013). The Court will stay the transfer order for fourteen days in order to preserve Carnegie's opportunity to waive objections to venue and personal jurisdiction, resulting in this suit remaining in this district. *See Costlow*, 790 F.2d at 1487-99; *Wood*, 705 F.2d at 1523.

Additionally, although the Court appreciates the briefs provided by the parties regarding whether UMass is a necessary and indispensable party to this suit, the Court declines to rule on this issue, which is governed by regional circuit law, due to the pending transfer. *See Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 967 (9th Cir. 1993) (holding that the laws of the transferee district are applicable in a case transferred pursuant to 28 U.S.C. § 1406(a)); *Univ. of Utah v. Max-Planck-Gesellschaft Zur Forderung Der Wissenschaften E.V.*, Nos. 2012-1540, 2012-1541, 2012-1661, 2013 WL 4406638, at *8-9 (Fed. Cir. Aug. 19, 2013) (applying the law of the regional circuit court). For the same reason, the Court declines ruling on Carnegie's motion to dismiss Ali's second and third claims. These arguments are denied as moot with leave to renew before the United States District Court for the District of Columbia.

Page 25 – OPINION AND ORDER

**CONCLUSION**

Plaintiff Ali's Motion for Reconsideration re Waiver of Sovereign Immunity (Dkt. 45) is **DENIED**. Defendant Carnegie's Motion for Reconsideration of the Court's Order Granting in Part Plaintiff's Motion for Jurisdictional Discovery is **GRANTED** (Dkt. 46), and Plaintiff Ali's Motion for Jurisdictional Discovery is **DENIED** (Dkt. 30). Defendants' Motion to Dismiss or Strike Plaintiff's Amended Complaint (Dkt. 18) is **GRANTED IN PART** and **DENIED AS MOOT IN PART**; specifically, Carnegie's Motion to Dismiss for lack of personal jurisdiction is **GRANTED**, and the remaining issues are **DENIED AS MOOT WITH LEAVE TO RENEW**. In fourteen days, unless otherwise ordered by the Court, the Clerk of the Court is directed to **TRANSFER** this action to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1406(a). All other pending motions are **DENIED AS MOOT**.

    **IT IS SO ORDERED.**

    DATED this 25th day of November, 2013.

                /s/ Michael H. Simon
                Michael H. Simon
                United States District Judge